## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

84 LUMBER COMPANY,

     Plaintiff,

                                     CASE NO.:8:22-cv-1237-WFJ-JSS

v.

GABLE WINDOW REPLACEMENT, INC.,
CANAL INDEMNITY COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
and CLEAR BLUE INSURANCE COMPANY,

     Defendants.

_____/

### PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

     84 Lumber Company ("84 Lumber"), by and through its undersigned counsel, sues Defendants named herein, and alleges the following:

### JURISDICTION AND VENUE

     1.     The following causes of action are for declaratory and other relief, where the amount in dispute is in excess of $30,000.00, exclusive of costs, pre-judgment interest and attorneys fees.

     2.     Venue and jurisdiction are proper in this Court, as the underlying action is ongoing in this Court, a substantial part of the events and omissions giving rise to the claims in the underlying action occurred in Hillsborough County, Florida, and the Project (defined below) is situated in Hillsborough County, Florida.

     3.     All conditions precedent to this action have been performed or have occurred.

     4.     This Court has jurisdiction over this action for declaratory relief pursuant to Chapter 86, Florida Statutes, specifically § 86.011, Florida Statutes.

1

**PARTIES**

5.       84 Lumber is a Pennsylvania limited partnership authorized to do business in Florida

and doing business in Hillsborough County, Florida at all times material to this complaint.

6.       Upon information and belief, Gable Window Replacement, Inc. ("GWR") is a Florida

corporation doing business in Hillsborough County, Florida at all times material to this complaint.

7.       Upon information and belief, Canal Indemnity Company ("Canal") is an insurance

company or corporation organized or existing under the laws of the State of South Carolina.  Upon

information and belief, at all times relevant, Canal was authorized to do business in the State of

Florida.

8.       Upon information and belief, AXIS Surplus Insurance Company ("Axis") is an

insurance company or corporation organized or existing under the laws of the State of Illinois.  Upon

information and belief, at all times relevant, Axis was authorized to do business in the State of

Florida.

9.       Upon information and belief, Clear Blue Insurance Company ("Clear Blue") is an

insurance company or corporation organized or existing under the laws of the State of Illinois.  Upon

information and belief, at all times relevant, Clear Blue was authorized to do business in the State

of Florida.

**UNDERLYING CONSTRUCTION ACTIONS**

10.       Underlying Plaintiff, Pine Ridge at Oak Creek Townhomes Association, Inc. (the

"Association") brought suit alleging construction defects against defendants, including 84 Lumber,

(the "Association Complaint"), attached as Exhibit No. 1 to 84 Lumber's original complaint, alleging

damages arising from the negligent and defective development, design, construction, and sale of the

townhomes and common areas at the Pine Ridge at Oak Creek Townhomes located in Riverview,

Hillsborough County, Florida (hereinafter referred to as the "Project").  The Association's most

2

recently filed Fourth Amended Complaint for Damages and Demand for Jury Trial ("Association's Fourth Amended Complaint"), is attached hereto as Exhibit No. 8. The circuit court entered an order on August 24, 2022 granting the filing of this Fourth Amended Complaint. The Association's Fourth Amended Complaint, Count XIV, specifically claims 84 Lumber is vicariously liable for its subcontractor, Gables's, breaches, negligent construction, acts and omissions in window installation.

11.     Underlying Defendant/Third Party Plaintiff, 84 Lumber, brought suit against the subcontractors hired by 84 Lumber on the Project, including Third Party Defendant, GWR, for damages to 84 Lumber related to GWR's work on the Project, as well as any pre and post-judgment interest, costs, and attorneys' fees incurred by 84 Lumber in connection with the defense of the underlying matters ("84 Lumber Third Party Complaint"), attached as Exhibit No. 2 to 84 Lumber's original complaint.

12.     Underlying Defendant/Crossclaim Plaintiffs, Taylor Morrison of Florida, Inc. and Taylor Morrison Services, Inc. (collectively referred to as "Taylor Morrison"), brought a crossclaim against defendants, including 84 Lumber, (the "Taylor Morrison Crossclaim"), attached as Exhibit No. 3 to 84 Lumber's original complaint, alleging damages caused by breach of contract, negligence, and violations of building codes, related to work performed at the Project.

13.     84 Lumber entered into an Independent Subcontractor Installer Agreement with GWR ("GWR Installer Agreement"). A true and correct copy of the GWR Installer Agreement is attached hereto as Exhibit No. 4 to 84 Lumber's original complaint.

14.     GWR installed windows in connection with the Project as an independent contractor for 84 Lumber.

15.     The GWR Installer Agreement required GWR to procure insurance coverage specifically naming 84 Lumber as an additional insured under an additional insured endorsement.

16.     The GWR Installer Agreement required the subcontractor to indemnify and defend 84 Lumber from and against any and all loss, costs, damage and liability whatsoever, and all related expenses, including costs and attorneys' fees, and all claims and demands therefore, whether with or without merit, on account of damage to real property in any way connected with the performance of the work by the subcontractor, regardless of whether such damage is caused or alleged to be caused in whole or in party by the negligence of 84 Lumber.

## INSURANCE POLICIES

17.     Upon information and belief, from 3/11/2012 through 3/11/2014, Canal issued the following policies to GWR ("Canal Policies"):

      a.     CGL Policy No. GL102734, with policy period 3/11/2012 to 3/11/2013; and

      b.     CGL Policy No. GL104267, with policy period 3/11/2013 to 3/11/2014.

The Canal Policies are attached hereto as Composite Exhibit No. 5 to 84 Lumber's original complaint.

18.     Upon information and belief, from 3/11/2014 through 3/11/2017, Axis issued the following insurance policies to GWR ("Axis Policies"):

      a.     CGL Policy No. FLGLN00209AX, with policy period 3/11/2014 to 3/11/2015;

      b.     CGL Policy No. FLGLN01370AX, with policy period 3/11/2015 to 3/11/2016; and

      c.     CGL Policy No. FLGLN02399AX, with policy period 3/11/2016 to 3/11/2017.

The Axis Policies are attached as Composite Exhibit No. 6 to 84 Lumber's original complaint.

19.     Upon information and belief, Clear Blue issued CGL Policy No. BIFL11712900, with policy period 3/11/2017 to 3/11/2018, to GWR ("Clear Blue Policy").  The Clear Blue Policy is attached as Exhibit No. 7 to 84 Lumber's original complaint.

## STATUTORY ATTORNEY'S FEES AND COSTS

20.     84 Lumber has been required to retain legal counsel and is obligated to pay them a reasonable fee for their services.  84 Lumber claims its attorneys' fees, legal assistant fees, and costs pursuant to Fla. Stat. Sections 627.428, 57.104, 57.041, or 626.9373.

## COUNT I - ACTION FOR DECLARATORY RELIEF
## AGAINST CANAL AND GWR

21.     84 Lumber realleges and incorporates by reference the allegations in paragraphs 1 through 20 above.

22.     Canal has claims or interests that would be affected by the requested declarations.

23.     GWR has claims or interests that would be affected by the requested declarations.

24.     The Canal Policies include an additional insured endorsement expressly naming 84 Lumber as an additional insured.  *See* Canal Policies filed as Composite Exhibit No. 5.

25.     Based on the policy language, the GWR Installer Agreement language, and the allegations in the underlying complaints implicating GWR's work on the Project, 84 Lumber qualifies as an additional insured.

26.     As an additional insured, 84 Lumber contends that the Canal Policies provide coverage for, including but not limited to, the following:

       a)     84 Lumber's liability, if any, although 84 Lumber disputes the Association's and Taylor Morrison's allegations and denies that 84 Lumber is liable for damages, caused by GWR (vicariously or otherwise), or

b)    84 Lumber's legal expenses incurred in addressing the claims of the Association and Taylor Morrison at the Project.

27.    To date, Canal has failed to acknowledge or accept 84 Lumber as an additional insured under any of the Canal Policies.

28.    As such, an actual controversy exists between Canal, GWR and 84 Lumber. 84 Lumber is in doubt as to the rights, duties, and obligations owed pursuant to the Canal Policies, and the applicability of the Canal Policies to the damages as alleged in the underlying complaints, or in any amendments or additions to the underlying complaints, and including but not limited to, whether the damages sustained including defense costs constitute a coverage loss under the Canal Policies. Thus, 84 Lumber is in need of and entitled to a judicial declaration of its rights regarding the same.

29.    More specifically, 84 Lumber believes Canal owes 84 Lumber a defense because:

a)    84 Lumber has been sued in the Association Complaint and Taylor Morrison Crossclaim for alleged damages caused by the work of its subcontractors, including  GWR, whether or not said claims are specifically alleged;

b)    The damages in the Association Complaint and Taylor Morrison Crossclaim constitute an "occurrence" under the Canal Policies [*see United States Fire Ins. Co. v. J.S.U.B.*, 979 So. 2d 871 (Fla. 2007)];

c)    The allegations of the Association Complaint and Taylor Morrison Crossclaim are sufficiently silent relative to timing of damages [*see Southern-Owners Ins. Co. v. Mac Contrs. of Fla., LLC,* 768 Fed. Appx. 970, 973, 2019 U.S. App. LEXIS 10689, 2019 WL 1567761 (11th Cir. 2019)];

d)    The allegations of the Association Complaint and Taylor Morrison Crossclaim do not fall solely and entirely within any exclusions or limitations in the Canal Policies.

6

e)    The allegations of the Association's Fourth Amended Complaint (Count XIV) expressly assert 84 Lumber is vicariously liable for GWR's negligence.

30.    Additionally, to the extent the facts necessary to determine indemnity are not fact dependent, such as trigger, can be determined, 84 Lumber requests a declaration as to the duty to indemnify.

31.    It is also requested that this Court retain jurisdiction for supplemental relief pursuant to § 86.061, Fla. Stat.  Said supplemental relief may include but not be limited to claims for damages and consequential damages as appropriate and any determinations relative to coverage for 84 Lumber's contractual liability claims or the scope of coverage available to the named insured.[1]

WHEREFORE, 84 Lumber respectfully requests that this Court declare the rights of the parties as follows:

a)    That this Court has jurisdiction over the subject matter;

b)    That this Court has jurisdiction over the parties in this matter;

c)    That the Canal Policies were in full force and effect at all times relevant to the loss;

d)    That 84 Lumber is an additional insured under one or more of the Canal Policies;

e)    That one or more of the Canal Policies provides coverage for 84 Lumber's liability;

f)    That one or more of the Canal Policies provides coverage for 84 Lumber's legal expenses incurred in addressing the claims of the Association and Taylor Morrison at the Project;

g)    That no exclusions or other limitations of coverage contained in the Canal Policies are applicable to the loss;

h)    That Canal owes attorneys' fees and costs pursuant to Fla. Stat. §§ 627.428, 57.104,

---

[1]  84 Lumber asserts the instant allegation for the purpose of preserving said claims and is not seeking a declaration relative to supplemental relief at this time.

57.041, or 626.9373;

I)      That this Court retain jurisdiction to grant supplemental relief pursuant to § 86.061, Fla. Stat., including but not limited to claims for damages and other additional relief, as appropriate, and any determinations relative to coverage for 84 Lumber's contractual liability claims or the scope of coverage available to the named insured.

## COUNT II - ACTION FOR DECLARATORY RELIEF AGAINST AXIS AND GWR

32.     84 Lumber realleges and incorporates by reference the allegations in paragraphs 1 through 20 above.

33.     Axis has claims or interests that would be affected by the requested declarations.

34.     GWR has claims or interests that would be affected by the requested declarations.

35.     The Axis Policies include an additional insured endorsement expressly naming 84 Lumber as an additional insured.  *See* Axis Policies filed as Composite Exhibit No. 6.

36.     Based on the policy language, the GWR Installer Agreement language, and the allegations in the underlying complaints implicating GWR's work on the Project, 84 Lumber qualifies as an additional insured.

37.     As an additional insured, 84 Lumber contends that the Axis Policies provide coverage for, including but not limited to, the following:

        a)      84 Lumber's liability, if any, although 84 Lumber disputes the Association's and Taylor Morrison's allegations and denies that 84 Lumber is liable for damages, caused by GWR (vicariously or otherwise), or

        b)      84 Lumber's legal expenses incurred in addressing the claims of the Association and Taylor Morrison at the Project.

38.     To date, Axis has failed to acknowledge or accept 84 Lumber as an additional insured

8

under any of the Axis Policies.

39.    As such, an actual controversy exists between Axis, GWR and 84 Lumber.  84 Lumber is in doubt as to the rights, duties, and obligations owed pursuant to the Axis Policies, and the applicability of the Axis Policies to the damages as alleged in the underlying complaints, or in any amendments or additions to the underlying complaints, and including but not limited to, whether the damages sustained including defense costs constitute a coverage loss under the Axis Policies. Thus, 84 Lumber is in need of and entitled to a judicial declaration of its rights regarding the same.

40.    More specifically, 84 Lumber believes Axis owes 84 Lumber a defense because:

a)    84 Lumber has been sued in the Association Complaint and Taylor Morrison Crossclaim for alleged damages caused by the work of its subcontractors, including  GWR, whether or not said claims are specifically alleged;

b)    The damages in the Association Complaint and Taylor Morrison Crossclaim constitute an "occurrence" under the Axis Policies [*see United States Fire Ins. Co. v. J.S.U.B.*, 979 So. 2d 871 (Fla. 2007)];

c)    The allegations of the Association Complaint and Taylor Morrison Crossclaim are sufficiently silent relative to timing of damages [*see Southern-Owners Ins. Co. v. Mac Contrs. of Fla., LLC,* 768 Fed. Appx. 970, 973, 2019 U.S. App. LEXIS 10689, 2019 WL 1567761 (11th Cir. 2019)];

d)    The allegations of the Association Complaint and Taylor Morrison Crossclaim do not fall solely and entirely within any exclusions or limitations in the Axis Policies.

e)    The allegations of the Association's Fourth Amended Complaint (Count XIV) expressly assert 84 Lumber is vicariously liable for GWR's negligence.

41.    Additionally, to the extent the facts necessary to determine indemnity are not fact

dependent, such as trigger, can be determined, 84 Lumber requests a declaration as to the duty to
indemnify.

42.    It is also requested that this Court retain jurisdiction for supplemental relief pursuant
to § 86.061, Fla. Stat.  Said supplemental relief may include but not be limited to claims for damages
and consequential damages as appropriate and any determinations relative to coverage for 84
Lumber's contractual liability claims or the scope of coverage available to the named insured.[2]

WHEREFORE, 84 Lumber respectfully requests that this Court declare the rights of the
parties as follows:

a)    That this Court has jurisdiction over the subject matter;

b)    That this Court has jurisdiction over the parties in this matter;

c)    That the Axis Policies were in full force and effect at all times relevant to the loss;

d)    That 84 Lumber is an additional insured under one or more of the Axis Policies;

e)    That one or more of the Axis Policies provides coverage for 84 Lumber's liability;

f)    That one or more of the Axis Policies provides coverage for 84 Lumber's legal
       expenses incurred in addressing the claims of the Association and Taylor Morrison
       at the Project;

g)    That no exclusions or other limitations of coverage contained in the Axis Policies are
       applicable to the loss;

h)    That Axis owes attorneys' fees and costs pursuant to Fla. Stat. §§ 627.428, 57.104,
       57.041, or 626.9373;

I)    That this Court retain jurisdiction to grant supplemental relief pursuant to § 86.061,
       Fla. Stat., including but not limited to claims for damages and other additional relief,

_____

[2] 84 Lumber asserts the instant allegation for the purpose of preserving said claims and is
not seeking a declaration relative to supplemental relief at this time.

10

as appropriate, and any determinations relative to coverage for 84 Lumber's
contractual liability claims or the scope of coverage available to the named insured.

### COUNT III - ACTION FOR DECLARATORY RELIEF
### AGAINST CLEAR BLUE AND GWR

43.    84 Lumber realleges and incorporates by reference the allegations in paragraphs 1
through 20 above.

44.    Clear Blue has claims or interests that would be affected by the requested
declarations.

45.    GWR has claims or interests that would be affected by the requested declarations.

46.    The Clear Blue Policy includes, in pertinent part:  an additional insured endorsement
expressly naming 84 Lumber as an additional insured; an automatic additional insured endorsement
providing automatic additional insured status where the insured and an organization have agreed in
writing in a contract or agreement that organization be added as an additional insured on the policy;
an "insured contract" exception to exclusions; and, an "insured contract" definition including any
other contract or agreement pertaining to the insured's business under which the insured assumes
the tort liability of another party to pay for "property damage" to a third person or organization.  *See*
Clear Blue Policy attached as Exhibit No. 7.

47.    Based on the policy language, the GWR Installer Agreement language, and the
allegations in the underlying complaints implicating GWR's work on the Project, 84 Lumber
qualifies as an additional insured.

48.    As an additional insured, 84 Lumber contends that the Clear Blue Policy provides
coverage for, including but not limited to, the following:

a)    84 Lumber's liability, if any, although 84 Lumber disputes the Association's

11

and Taylor Morrison's allegations and denies that 84 Lumber is liable for damages, caused by GWR (vicariously or otherwise), or

b)    84 Lumber's legal expenses incurred in addressing the claims of the Association and Taylor Morrison at the Project.

49.    To date, Clear Blue  has failed to acknowledge or accept 84 Lumber as an additional insured under the Clear Blue Policy.

50.    As such, an actual controversy exists between Clear Blue, GWR and 84 Lumber.  84 Lumber is in doubt as to the rights, duties, and obligations owed pursuant to the Clear Blue Policy, and the applicability of the Clear Blue Policy to the damages as alleged in the underlying complaints, or in any amendments or additions to the underlying complaints, and including but not limited to, whether the damages sustained including defense costs constitute a coverage loss under the Clear Blue Policy.  Thus, 84 Lumber is in need of and entitled to a judicial declaration of its rights regarding the same.

51.    More specifically, 84 Lumber believes Clear Blue owes 84 Lumber a defense because:

a)    84 Lumber has been sued in the Association Complaint and Taylor Morrison Crossclaim for alleged damages caused by the work of its subcontractors, including  GWR, whether or not said claims are specifically alleged;

b)    The damages in the Association Complaint and Taylor Morrison Crossclaim constitute an "occurrence" under the clear Blue Policy [*see United States Fire Ins. Co. v. J.S.U.B.*, 979 So. 2d 871 (Fla. 2007)];

c)    The allegations of the Association Complaint and Taylor Morrison Crossclaim are sufficiently silent relative to timing of damages [*see Southern-Owners Ins. Co. v. Mac Contrs. of Fla., LLC,* 768 Fed. Appx. 970,

12

973, 2019 U.S. App. LEXIS 10689, 2019 WL 1567761 (11th Cir. 2019)] ;

d)      The allegations of the Association Complaint and Taylor Morrison Crossclaim do not fall solely and entirely within any exclusions or limitations in the Clear Blue Policy.

e)      The allegations of the Association's Fourth Amended Complaint (Count XIV) expressly assert 84 Lumber is vicariously liable for GWR's negligence.

52.      Pursuant to the definition of "insured contract" contained within the Clear Blue Policy, the GWR Installer Agreement qualifies as an "insured contract."

53.      Even if 84 Lumber were not deemed an additional insured, Clear Blue owed defense costs under the exceptions to the contract Exclusions because the GWR Installer Agreement is an "insured contract."

54.      Additionally, to the extent the facts necessary to determine indemnity are not fact dependent, such as trigger, can be determined, 84 Lumber requests a declaration as to the duty to indemnify.

55.      It is also requested that this Court retain jurisdiction for supplemental relief pursuant to § 86.061, Fla. Stat.  Said supplemental relief may include but not be limited to claims for damages and consequential damages as appropriate and any determinations relative to coverage for 84 Lumber's contractual liability claims or the scope of coverage available to the named insured.[3]

WHEREFORE, 84 Lumber respectfully requests that this Court declare the rights of the parties as follows:

a)      That this Court has jurisdiction over the subject matter;

b)      That this Court has jurisdiction over the parties in this matter;

---

[3] 84 Lumber asserts the instant allegation for the purpose of preserving said claims and is not seeking a declaration relative to supplemental relief at this time.

c) That the Clear Blue Policy was in full force and effect at all times relevant to the loss;

d) That 84 Lumber is an additional insured under one or more of the Clear Blue Policy;

e) That the Clear Blue Policy provides coverage for 84 Lumber's liability;

f) That the Clear Blue Policy provides coverage for 84 Lumber's legal expenses incurred in addressing the claims of the Association and Taylor Morrison at the Project;

g) That no exclusions or other limitations of coverage contained in the Clear Blue Policy is applicable to the loss;

h) That Clear Blue owes attorneys' fees and costs pursuant to Fla. Stat. §§ 627.428, 57.104, 57.041, or 626.9373;

I) That this Court retain jurisdiction to grant supplemental relief pursuant to § 86.061, Fla. Stat., including but not limited to claims for damages and other additional relief, as appropriate, and any determinations relative to coverage for 84 Lumber's contractual liability claims or the scope of coverage available to the named insured.

## DEMAND FOR JURY TRIAL

84 Lumber demands a jury trial on all issues triable by jury.

       */s/ Raymond T. Elligett, Jr.*
       Raymond T. Elligett, Jr., Esq.
       Florida Bar No. 261939
       Shirley T. Faircloth, Esq.
       Florida Bar No. 850128
       Buell & Elligett, P.A.
       3003 W. Azeele Street, Suite 100
       Tampa, Florida  33609
       Tel:   (813) 874-2600
       Fax:   (813) 874-1760
       elligett@belawtampa.com

14

faircloth@belawtampa.com
pisciotti@belawtampa.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished on August 28, 2022, to all counsel of record via the CM/ECF system.

*/s/ Raymond T. Elligett, Jr.*
Raymond T. Elligett, Jr., Esq.

# Exhibit 8

THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
COMPLEX BUSINESS LITIGATION DIVISION

PINE RIDGE AT OAK CREEK TOWNHOMES
ASSOCIATION, INC., a Florida not for profit
corporation,

      Plaintiff,                          Case No.: 2019-CA-001540

v.

TAYLOR MORRISON OF FLORIDA, INC., a
Florida corporation; TAYLOR MORRISON
SERVICES, INC., F/K/A MORRISON HOMES,
INC., a foreign corporation; 84 LUMBER
COMPANY, a foreign limited partnership;
JEFFCO CONSTRUCTION, INC., a Florida
corporation; KEN CREEL STUCCO & STONE,
INC., a Florida corporation; PHOENIX
CONSTRUCTION GROUP LLC, a Florida
limited liability company; MILLARD
ROOFING, INC., a Florida corporation; LITTLE
M & M'S PAINTING, INC., a Florida
Corporation; METRO PAINTING TAMPA,
INC., a Florida corporation; BRAD
MCDONALD ROOFING & CONSTRUCTION,
INC., a Florida corporation; THOMAS D, INC.
f/k/a DANIEL INSULATION, INC., a Florida
corporation; SUTTON CONTRACTING
SOLUTIONS, INC., a Florida corporation;
GALLO BUILDING SERVICES, INC., a Florida
corporation; ROCKWELL BUILDING
SYSTEMS, LLC, a Florida limited liability
company; LEOLA CONSTRUCTION, L.L.C., a
Florida limited liability company; BADGER
CONSTRUCTION & ASSOCIATES, INC., a
Florida corporation; GABLE WINDOW
REPLACEMENT, INC., a Florida corporation,

      Defendants.
_____/

84 LUMBER COMPANY,

      Third-Party Plaintiff,

v.

GABLE WINDOW REPLACEMENT, INC., NU SCHOOL CONSTRUCTION, INC., and NEW ALENCO WINDOWS, LTD.,

      Third-Party Defendants.

_____/

TAYLOR MORRISON OF FLORIDA, INC. and TAYLOR MORRISON SERVICES, INC.,

      Crossclaim Plaintiffs,

v.

84 LUMBER COMPANY, JEFFCO CONSTRUCTION, INC., KEN CREEL STUCCO & STONE, INC., PHOENIX CONSTRUCTION GROUP LLC, MILLARD ROOFING, INC., LITTLE M & M'S PAINTING, INC., METRO PAINTING TAMPA, INC., BRAD MCDONALD ROOFING & CONSTRUCTION, INC., THOMAS D. INC. a/k/a DANIEL INSULATION, INC., SUTTON CONTRACTING SOLUTIONS, INC.; ROCKWELL BUILDING SYSTEMS, LLC, a Florida limited liability company; LEOLA CONSTRUCTION, LLC, a Florida limited liability company; BADGER CONSTRUCTION & ASSOCIATES, INC., a Florida corporation; and GALLO BUILDING SERVICES, INC, a Florida corporation,

      Crossclaim Defendants.

_____/

KEN CREEL STUCCO & STONE, INC.,

      Third-Party Plaintiff,

v.

JUANMA LATH STUCCO, INC. & M.A. STUCCO, INC.,

      Third-Party Defendants.

_____/

PHOENIX CONSTRUCTION GROUP, LLC,
INC.,

      Third-Party Plaintiff,

v.

  A & Z STUCCO, LLC,

    Third-Party Defendants.

_____/

## FOURTH AMENDED COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff PINE RIDGE AT OAK CREEK TOWNHOMES ASSOCIATION, INC. (the "Association"), by and through undersigned counsel, hereby sues TAYLOR MORRISON OF FLORIDA, INC.; and TAYLOR MORRISON SERVICES, INC., F/K/A MORRISON HOMES, INC. (collectively, "TAYLOR MORRISON"), 84 LUMBER COMPANY ("84 LUMBER"); JEFFCO CONSTRUCTION, INC. ("JEFFCO"); KEN CREEL STUCCO & STONE, INC. ("KEN CREEL STUCCO"); PHOENIX CONSTRUCTION GROUP LLC ("PHOENIX"); MILLARD ROOFING, INC., ("MILLARD"); LITTLE M & M'S PAINTING, INC., ("LITTLE M & M'S"); METRO PAINTING TAMPA, INC.;  ("METRO") BRAD MCDONALD ROOFING & CONSTRUCTION, INC. ("BRAD MCDONALD"); DANIEL INSULATION, INC. ("DANIEL"); SUTTON CONTRACTING SOLUTIONS, INC. ("SUTTON"); GALLO BUILDING SERVICES, INC. ("GALLO"); ROCKWELL BUILDING SYSTEMS, LLC ("ROCKWELL"); LEOLA CONSTRUCTION, L.L.C. ("LEOLA"); BADGER CONSTRUCTION & ASSOCIATES, INC. ("BADGER"); and GABLE WINDOW REPLACEMENT, INC. ("GABLE") (collectively, "Defendants") and seeks trial by jury.  In support thereof, the Association alleges as follows:

3

## NATURE OF THE CASE

1.      This is an action for damages arising from the negligent and defective development, design, construction, and sale of the townhomes and common areas at the Pine Ridge at Oak Creek Townhomes in Riverview, Hillsborough County, Florida (the "Townhomes" or the "Community") caused by the Defendants responsible for the development, design, construction, and sale of the Townhomes and related common areas.

## JURISDICTION AND VENUE

2.      This is an action for monetary damages in excess of $30,000.00, exclusive of interest, costs, and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

3.      The subject property of this action is located in Hillsborough County, Florida.

4.      The Association has an office for the transaction of its usual and customary business in Hillsborough County, Florida.

5.      At all times material, Taylor Morrison conducted business or resided in Hillsborough County, Florida.

6.      The acts and/or omissions giving rise to this Complaint took place in Hillsborough County, Florida and each cause of action occurred in Hillsborough County, Florida.  Therefore, jurisdiction and venue are proper in this County.

7.      All conditions precedent to bringing this action have occurred or have been waived, including, but not limited to, the requirements of Chapter 558, Fla. Stat.

8.      The alleged defects herein have been examined and certified by an appropriately licensed Florida engineer, design professional, contractor, or otherwise licensed Florida individual or entity.

## PARTIES

9.      The Association is a Florida non-profit corporation and has an office for the transaction of its usual and customary business in Hillsborough County, Florida.

10.      The Association is a corporation organized and existing under Chapter 720, Fla. Stat., to provide a corporate entity for the operation of the Community in Hillsborough County, Florida.

11.      The Association brings this action on behalf of its members pursuant to Rule 1.220, Florida Rules of Civil Procedure, and § 720.303(1), Florida Statutes, for all matters of common interest.  All matters within this Complaint are of common interest to the Association and its members.

12.      Defendant, TAYLOR MORRISON OF FLORIDA, INC. was a Florida Corporation with its principal place of business in Scottsdale, Arizona, and was duly licensed to conduct business in the State of Florida.

13.      Defendant, TAYLOR MORRISON SERVICES, INC., F/K/A MORRISON HOMES, INC. was a foreign corporation with its principal place of business in Scottsdale, Arizona, and was duly licensed to conduct business in the State of Florida.

14.      Defendant, 84 LUMBER was a foreign limited partnership with its principal place of business in Eighty Four, Pennsylvania, and was authorized to conduct business in the State of Florida.

15.      Upon information and belief, at all material times 84 LUMBER served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the windows and sliding glass doors.

16.     Defendant, JEFFCO was a Florida corporation with its principal place of business in Dover, Florida, and was authorized to conduct business in the State of Florida.

17.     Upon information and belief, at all material times JEFFCO served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the stucco system for the Townhomes.

18.     Defendant, KEN CREEL STUCCO was a Florida Corporation with its principal place of business in Thonotosassa, FL, and was authorized to conduct business in the State of Florida.

19.     Upon information and belief, at all material times KEN CREEL STUCCO served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the stucco system for the Townhomes.

20.     Defendant, PHOENIX was a Florida limited liability company with its principal place of business in Tampa, Florida, and was authorized to conduct business in the State of Florida.

21.     Upon information and belief, at all material times PHOENIX served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the stucco system for the Townhomes.

22.     Defendant, MILLARD was a Florida corporation with its principal place of business in Riverview, Florida, and was authorized to conduct business in the State of Florida.

23.     Upon information and belief, at all material times MILLARD served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the roofs for the Townhomes.

24.     Defendant, LITTLE M & M'S was a Florida corporation with its principal place of business in Tampa, Florida, and was authorized to conduct business in the State of Florida.

25.     Upon information and belief, at all material times LITTLE M & M'S served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the sealant and paint for the Townhomes.

26.     Defendant, METRO was a Florida corporation with its principal place of business in Tampa, Florida, and was authorized to conduct business in the State of Florida.

27.     Upon information and belief, at all material times METRO served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the sealant and paint for the Townhomes.

28.     Defendant, BRAD MCDONALD was a Florida corporation with its principal place of business in New Port Richey, Florida, and was authorized to conduct business in the State of Florida.

29.     Upon information and belief, at all material times BRAD MCDONALD served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the roofs for the Townhomes.

30.     Defendant, DANIEL was a Florida corporation with its principal place of business in St. Petersburg, Florida, and was authorized to conduct business in the State of Florida.

31.     Upon information and belief, at all material times DANIEL served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the housewrap and related accessories for the Townhomes.

32.     Defendant, SUTTON was a Florida corporation with its principal place of business in Odessa, Florida, and was authorized to conduct business in the State of Florida.

33.     Upon information and belief, at all material times SUTTON served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work

including, but not limited to furnishing and installing the framing and related accessories for the Townhomes.

34.    Defendant, GALLO was a Florida corporation with its principal place of business in Odessa, Florida, and was authorized to conduct business in the State of Florida.

35.    Upon information and belief, at all material times GALLO served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the framing and related accessories for the Townhomes.

36.    Defendant, ROCKWELL was a Florida corporation with its principal place of business in Odessa, Florida, and was authorized to conduct business in the State of Florida.

37.    Upon information and belief, at all material times ROCKWELL served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the framing and related accessories for the Townhomes.

38.    Defendant, LEOLA was a Florida corporation with its principal place of business in Odessa, Florida, and was authorized to conduct business in the State of Florida.

39.    Upon information and belief, at all material times LEOLA served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the framing and related accessories for the Townhomes.

40.    Defendant, BADGER was a Florida corporation with its principal place of business in Odessa, Florida, and was authorized to conduct business in the State of Florida.

41.    Upon information and belief, at all material times BADGER served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work

including, but not limited to furnishing and installing the framing and related accessories for the Townhomes.

42.     Defendant, GABLE was a Florida corporation with its principal place of business in Odessa, Florida, and was authorized to conduct business in the State of Florida.

43.     Upon information and belief, at all material times GABLE served as a subcontractor for the Townhomes, and was responsible for all aspects of its scope of work including, but not limited to furnishing and installing the windows and related accessories for the Townhomes.

44.     The parties identified in paragraphs 14 through 43 shall hereinafter be referred to as the "SUBCONTRACTORS."

45.     As a result of the Defendants' conduct, the Association has been required to retain the services of the undersigned counsel to represent its interests in this action and is obligated to pay a reasonable fee for their services.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

46.     The Association's members are collectively the fee-simple owners of the Townhomes, the common areas, and the real property, which comprise the Community.

47.     The Association has the responsibility to maintain and repair the common areas of the Community, including, but not limited, to the roofs, windows, exterior walls, and common areas.

48.     The Association also has the duty to maintain the Community by making all proper expenditures, where possible, for the property's upkeep and management.

49.     Upon information and belief, TAYLOR MORRISON controlled the Association until turnover.

50.      The causes of action alleged herein concern matters of common interest to the Association's members, including, but not limited to, matters affecting the Townhomes and all common areas of the Community. The Association is responsible for the maintenance and upkeep of the roofs and building envelopes of each Townhome buildings.

51.      Defendants undertook to construct the Townhomes and common areas for sale to, and use of, the general public, including the Association, its members, and their predecessors in interest.

52.      In so doing, upon information and belief, Defendants failed to reasonably and adequately construct the Townhomes and commons areas by failing to design, develop, and/or construct the Townhomes and common areas in accordance with the Florida Building Code, manufacturers' recommendations, permitted plans and specifications, and the standards in the industry.

53.      Upon information and belief and pending investigation, the Association has discovered systemic construction defects related to the development, design, and construction of the Townhomes and common areas that include, but are not limited to:

   a.  Defects and deficiencies associated with installation of the windows;
   b.  Roofing and flashing defects, including but not limited to, improper installation of roof diverters, improper installation of valley flashing, roof safety harness rings left behind;
   c.  Improper waterproofing causing water intrusion;
   d.  Framing defects;
   e.  Building envelope defects;
   f.  Defective stucco systems;
   g.  Building envelope defects;
   h.  Improper installation of stucco and water intrusion resulting from same;
   i.  Stucco cracking over masonry at windows;
   j.  Lack of 4-inch roof cement over drip edge flange (2014 FRC R905.2.8.5);
   k.  Shingle trim line not offset 2" from valley line (2004, 2007, 2010, 2014 FRC R903.1);
   l.  Improper installation of roof shingle nails, including improper spacing and improper number of nails, not per manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);
   m.  Starter strip fasteners installed less than 3 inches from edge of roof, not per

manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);

n. Improperly sealed roof vents (2007, 2010, 2014 FRC R903.1);

o. Window failed spray test (2004, 2007, 2010, 2014 FRC R703.1);

p. Window failed dam test (2004, 2007, 2010, 2014 FRC R703.1);

q. Window fin gap under mullion (2004, 2007, 2010, 2014 FRC R101.2, R703.1; 2004, 2007, 2010 FBC 104.9);

r. Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1);

s. Insufficient length of wire lath staples (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063: 7.10.2.2);

t. Lath fastener through window fin (2004, 2007, 2010, 2014 FRC R703.1);

u. Paper-backed lath not lapped paper-to-paper/lath-to-lath (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3);

v. Poor embedment of lath into plaster (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.2.1);

w. Lack of isolation and improper application of sealant around window perimeter (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);

x. Stucco not applied in 3-step process (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.6);

y. Inadequate installation of flashing around window perimeter (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

z. Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);

aa. Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);

bb. Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

cc. Lack of isolation/improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1);

dd. Stucco not bonded to cement masonry substrate (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 5.2);

ee. Improper application of secondary sealant around penetration (2004, 2007, 2010 FRC; 2014 FRC R703.1);

ff. Debonding of stucco layers (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

gg. Improper stucco application (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

hh. Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

ii. Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

jj. Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

kk. Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

ll. Roof sheathing was too thing, not incompliance with building plans (2004,

2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014
FBC 104.9, 107.4);

mm.    Floor trusses were installed in direct contact with masonry (2004, 2007,
2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC
104.9, 107.4);

nn. Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC
R317.3.3);

oo. Defects in the material and workmanship incident to the installation of the
above.

54.    The defects and deficiencies are a violation of design, building, and construction

practices, industry standards, manufacturer requirements, and various governmental codes and

restrictions, including, without limitation, the Florida Building Code, as in effect at the time the

Community was constructed, as well as at the time it was inspected and sold to the public for

residential use.

55.    At all times material hereto, all of the defects, deficiencies, and building code

violations were or should have been known to the Defendants.

56.    The defects and deficiencies were not readily discoverable by the Association or

its members through reasonable inspection at the time of purchase, and the Association and its

members became aware of the defects and deficiencies only after inspections performed by expert

consultants.

57.    As a direct result of the collective and individual failures on the part of the

Defendants, the Association and its members have suffered and continue to suffer damages

proximately caused by defects and deficiencies in the Townhomes and common areas.

58.    In compliance with § 558.004, Fla. Stat., the Association has served upon the

Defendants written notices (the "558 Notices"), including statements that the notice was being

given to satisfy the requirements of Ch. 558, Fla. Stat., and specifying in reasonable detail the

common defects and damages and injuries to the Townhomes and common areas that are the

subject of the claims, and describing in reasonable detail the common causes of the common

defects to the extent known, the nature and extent of the damages and injuries resulting from the defects to the extent known, and the location of each defect to the extent known. A Florida certified design professional and/or engineer has examined and certified the defects as alleged in the 558 Notices and herein.

59.     The notice was sent on behalf of the Association, in accordance with the scope of its duties pursuant to Chapter 720, Fla. Stat.

60.     Since turnover, the Association has, and will continue, to perform routine maintenance at the Community.

61.     Cumulatively, the conditions described in paragraph 53 have resulted in damage to the Townhomes and common areas, including, but not limited to, work performed by other trades, interior finishes, and damage to other personal property that the Association has been, and will continue, to be responsible for.

62.     Extensive rehabilitation and repairs are necessary to repair the damage caused by the deficiencies identified in paragraph 53 and/or to reinstate the above system assemblies so that they conform to the applicable code(s), meet reasonable and expected performance standards, and comply with the permitted plans and specifications.

## COUNT I – NEGLIGENCE AND VICARIOUS LIABILITY
## (AGAINST TAYLOR MORRISON)

63.     The Association adopts and re-alleges paragraphs 1 through 62 of this Complaint as if alleged herein.

64.     TAYLOR MORRISON served as general contractor and developer for the Community and common areas and responsible for all aspects of the construction of the Townhomes and common areas of the Community, including, but not limited to, exercising reasonable care in constructing the Townhomes and common areas in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and

manufacturers' recommendation and in such a way so to not damage other property.

65.    As the general contractor, TAYLOR MORRISON was under a non-delegable duty to the Association and its members to exercise reasonable care in constructing the Townhomes and common areas and in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendation and in such a way so to not damage other property.

66.    TAYLOR MORRISON breached its duty by negligently constructing, inspecting, supervising, certifying, and approving the original construction of the Townhomes and the common areas including, but not limited to, those defective conditions described in paragraph 53 above, including all subparts, thereby resulting in damages to the Townhomes and the common areas, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities involved in the construction of the Townhomes and common areas, necessitating repairs to the resulting damage.

67.    Further, as the general contractor for the original construction, TAYLOR MORRISON is vicariously responsible for the negligent construction performed by any subcontractors utilized in the construction of the Community.

68.    As a direct and proximate result of TAYLOR MORRISON's breach of the above-mentioned duties, the Association has been and will be required to expend large sums of money for the repair and maintenance of the Townhomes and common areas and for damages caused by the defects and deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands judgment against TAYLOR MORRISON for damages including, but not limited to, the cost of repairing the construction deficiencies, the resulting damages from the construction deficiencies, the cost to properly fund reserve and

operating accounts, the incidental and consequential damages caused thereby, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and for any additional relief this Court deems just and proper.

<b><u>COUNT II – BREACH OF FLORIDA BUILDING CODE</u></b><br><b><u>(AGAINST TAYLOR MORRISON)</u></b>

69.     The Association adopts and re-alleges paragraphs 1 through 62 of this Complaint as if alleged herein.

70.     TAYLOR MORRISON was required to construct and build the Townhomes and common areas in accordance with the Florida Building Code in effect at the time the Townhomes and common areas were constructed.

71.     TAYLOR MORRISON served as the developer and general contractor for the construction of the Townhomes and common areas and thus has a responsibility not to commit violations of the Florida Building Code.

72.     As the entity responsible for obtaining and pulling the permits for the construction of the Townhomes and common areas, TAYLOR MORRISON owed the Association a non-delegable duty to comply with the Florida Building Code.

73.     TAYLOR MORRISON actively participated in the construction of the Townhomes and the common areas, directly supervised and influenced the manner in which all of the work was performed, and/or negligently created and/or negligently approved conditions that were in violation of the Florida Building Code, and as such committed violations of the Florida Building Code, thereby violating § 553.84, Fla. Stat., as identified in paragraph 53 above, including all subparts.

74.     TAYLOR MORRISON knew or should have known that the building code violations existed.

15

75.     As a direct and proximate result of TAYLOR MORRISON's violation(s) of §
553.84, Fla. Stat., the Association and its members have suffered damages, including, but not
limited to, property damage to the Townhomes and common areas, water damage, and damages to
the work and property of other persons or entities, including, but not limited to, those involved in
the construction of the Townhomes and common areas, necessitating repairs to the resulting
damage, in addition to the cost to repair the building code violations.

76.     As a direct and proximate result of TAYLOR MORRISON's violation(s) of §
553.84, Fla. Stat., the Association has been and will be required to expend large sums of money
for the repair of the Townhomes and common areas and for resulting damages caused by the
defects and deficiencies at the Community, including, but not limited to, those conditions
described herein, and to repair the building code violations.

**WHEREFORE**, the Association demands judgment against TAYLOR MORRISON for
damages including, but not limited to, the cost of repairing the construction deficiencies, the
resulting damages from the construction deficiencies, the incidental and consequential damages
caused thereby, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by
jury, and for any additional relief this Court deems just and proper.

## <u>COUNT III - BREACH OF IMPLIED WARRANTIES</u><br><u>(AGAINST TAYLOR MORRISON)</u>

77.     The Association adopts and re-alleges paragraphs 1 through 62 of this Complaint
as if alleged herein.

78.     As the developer and general contractor of the Townhomes, TAYLOR
MORRISON impliedly warranted to the Association and the unit owners that each parcel of the
Townhomes was designed and constructed free from defect or deficiency in materials or
workmanship in accordance with the plans and specifications filed as a matter of public record,
the applicable building codes and all applicable local and national codes, ordinances and industry

16

standards, and good design, engineering, and construction practices. These implied warranties are those generally described as implied warranties of fitness, merchantability, habitability, and/or workmanlike construction.

79.    The Association and its members relied upon the warranties, skill, and judgment from TAYLOR MORRISON to ensure the condition of the Townhomes was free from defect or deficiency in materials or workmanship in accordance with the plans and specifications filed as a matter of public record, the applicable building codes, ordinances and industry standards, and good design, engineering, and construction practices and free from water intrusion and related damages.

80.    TAYLOR MORRISON breached the implied warranties by negligently constructing the Townhomes as set forth in paragraph 53 above, including all subparts, and for failing to remedy same.

81.    The aggregate effect of the defects and deficiencies set forth above has led to community-wide water intrusion damages and other damages.

82.    As a proximate cause of TAYLOR MORRISON's conduct and omissions, the Association and its members have and continue to suffer damages which include, without limitation, the cost to repair the defects and deficiencies in the Community, which are now and will continue to pose a threat to the health, safety, and welfare of the Association and its members, their guests, and the general public until such repairs are effectuated, as well as damages incident to, and consequences of TAYLOR MORRISON's breach. Damages, in an amount to be determined at trial, are in excess of $15,000.00 and continuing.

83.    As a direct and proximate result of TAYLOR MORRISON's breach of the above mentioned warranties, the Association through assessment of its members has expended and will be required to expend additional large sums of money to remedy the defects and deficiencies, and to pay consequential damages to or on behalf of its members.

84.    As a result of TAYLOR MORRISON's breach of implied warranties, the Association has been compelled to retain the services of attorneys to comply with statutory requirements prior to litigation, to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE**, the Association demands judgment against TAYLOR MORRISON for damages including, but not limited to, the cost of repairing the construction deficiencies, the resulting damages from the construction deficiencies, the incidental and consequential damages caused thereby, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and for any additional relief this Court deems just and proper.

## COUNT IV - NEGLIGENCE
### (Against JEFFCO)

85.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

86.    Upon information and belief, JEFFCO served as a subcontractor for the construction of the Project.

87.    JEFFCO had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

88.    JEFFCO breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

18

89.    Specifically, JEFFCO breached its duties as follows:

    a.  Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1);

    b.  Insufficient length of wire lath staples (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063: 7.10.2.2);

    c.  Lath fastener through window fin (2004, 2007, 2010, 2014 FRC R703.1);

    d.  Paper-backed lath not lapped paper-to-paper/lath-to-lath (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3);

    e.  Poor embedment of lath into plaster (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.2.1);

    f.  Lack of isolation and improper application of sealant around window perimeter (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);

    g.  Stucco not applied in 3-step process (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.6);

    h.  Inadequate installation of flashing around window perimeter (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

    i.  Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);

    j.  Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);

    k.  Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

    l.  Lack of isolation/improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1);

    m.  Stucco not bonded to cement masonry substrate (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 5.2);

    n.  Improper application of secondary sealant around penetration (2004, 2007, 2010 FRC; 2014 FRC R703.1);

    o.  Debonding of stucco layers (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

    p.  Improper stucco application (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

    q.  Defects in the material and workmanship incident to the installation of the above.

90.    JEFFCO further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

91.    JEFFCO's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

92.    As a direct and proximate result of JEFFCO's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against JEFFCO for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT V - VIOLATION OF BUILDING CODE
### (Against JEFFCO)

93.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

94.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

95.    JEFFCO owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

96.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

97.     JEFFCO violated the FBC by improper construction and installation of the building envelope as follows:

    a.  Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1);
    b.  Insufficient length of wire lath staples (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063: 7.10.2.2);
    c.  Lath fastener through window fin (2004, 2007, 2010, 2014 FRC R703.1);
    d.  Paper-backed lath not lapped paper-to-paper/lath-to-lath (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3);
    e.  Poor embedment of lath into plaster (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.2.1);
    f.  Lack of isolation and improper application of sealant around window perimeter (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
    g.  Stucco not applied in 3-step process (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.6);
    h.  Inadequate installation of flashing around window perimeter (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);
    i.  Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);
    j.  Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);
    k.  Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);
    l.  Lack of isolation/improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1);
    m.  Stucco not bonded to cement masonry substrate (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 5.2);
    n.  Improper application of secondary sealant around penetration (2004, 2007, 2010 FRC; 2014 FRC R703.1);
    o.  Debonding of stucco layers (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);
    p.  Improper stucco application (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);
    q.  Defects in the material and workmanship incident to the installation of the above.

98.     The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will

21

continue to cause, loss of use to the Association and its members.

99. JEFFCO knew or should have known that the violations alleged and described above existed.

100. As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00.

101. The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

102. As a result of the conduct of JEFFCO, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against JEFFCO for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT VI - NEGLIGENCE
### (Against KEN CREEL STUCCO)

103. The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

104. Upon information and belief, KEN CREEL STUCCO served as a subcontractor for

the construction of the Project.

105.     KEN CREEL STUCCO had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

106.     KEN CREEL STUCCO breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

107.     KEN CREEL STUCCO further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

108.     KEN CREEL STUCCO breached its duties as follows:

   a.   Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1);
   b.   Insufficient length of wire lath staples (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063: 7.10.2.2);
   c.   Lath fastener through window fin (2004, 2007, 2010, 2014 FRC R703.1);
   d.   Paper-backed lath not lapped paper-to-paper/lath-to-lath (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3);
   e.   Poor embedment of lath into plaster (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.2.1);
   f.   Lack of isolation and improper application of sealant around window perimeter (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
   g.   Stucco not applied in 3-step process (2004, 2007, 2010 FRC R703.6.1; 2014

23

      FRC R703.6; ASTM C926 7.1.6);

h.   Inadequate installation of flashing around window perimeter (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

i.    Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);

j.    Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);

k.   Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

l.    Lack of isolation/improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1);

m.  Stucco not bonded to cement masonry substrate (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 5.2);

n.   Improper application of secondary sealant around penetration (2004, 2007, 2010 FRC; 2014 FRC R703.1);

o.   Debonding of stucco layers (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

p.   Improper stucco application (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

q.   Defects in the material and workmanship incident to the installation of the above.

109.   KEN CREEL STUCCO's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

110.   As a direct and proximate result of KEN CREEL STUCCO's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against KEN CREEL STUCCO for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT VII - VIOLATION OF BUILDING CODE
### (Against KEN CREEL STUCCO)

111.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

112.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

113.    KEN CREEL STUCCO owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

114.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

115.    KEN CREEL STUCCO violated the FBC by improper construction and installation of the building envelope as follows:

a. Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1);
b. Insufficient length of wire lath staples (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063: 7.10.2.2);
c. Lath fastener through window fin (2004, 2007, 2010, 2014 FRC R703.1);
d. Paper-backed lath not lapped paper-to-paper/lath-to-lath (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3);
e. Poor embedment of lath into plaster (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.2.1);
f. Lack of isolation and improper application of sealant around window perimeter (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
g. Stucco not applied in 3-step process (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.6);
h. Inadequate installation of flashing around window perimeter (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);
i. Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);

25

j.  Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);

k.  Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

l.  Lack of isolation/improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1);

m.  Stucco not bonded to cement masonry substrate (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 5.2);

n.  Improper application of secondary sealant around penetration (2004, 2007, 2010 FRC; 2014 FRC R703.1);

o.  Debonding of stucco layers (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

p.  Improper stucco application (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

q.  Defects in the material and workmanship incident to the installation of the above.

116.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

117.    KEN CREEL STUCCO knew or should have known that the violations alleged and described above existed.

118.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00

119.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

120.    As a result of the conduct of KEN CREEL STUCCO, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute

these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against KEN CREEL STUCCO for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## <u>COUNT VIII - NEGLIGENCE</u>
<u>(Against PHOENIX)</u>

121.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

122.    Upon information and belief, PHOENIX served as a subcontractor for the construction of the Project.

123.    PHOENIX had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

124.    PHOENIX breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

27

125.    PHOENIX further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

126.    PHOENIX violated the FBC by improper construction and installation of the building envelope as follows:

    a.  Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1);

    b.  Insufficient length of wire lath staples (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063: 7.10.2.2);

    c.  Lath fastener through window fin (2004, 2007, 2010, 2014 FRC R703.1);

    d.  Paper-backed lath not lapped paper-to-paper/lath-to-lath (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3);

    e.  Poor embedment of lath into plaster (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.2.1);

    f.  Lack of isolation and improper application of sealant around window perimeter (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);

    g.  Stucco not applied in 3-step process (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.6);

    h.  Inadequate installation of flashing around window perimeter (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

    i.  Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);

    j.  Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);

    k.  Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);

    l.  Lack of isolation/improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1);

    m.  Stucco not bonded to cement masonry substrate (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 5.2);

    n.  Improper application of secondary sealant around penetration (2004, 2007, 2010 FRC; 2014 FRC R703.1);

    o.  Debonding of stucco layers (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

    p.  Improper stucco application (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.3.3.2);

    q.  Defects in the material and workmanship incident to the installation of the

above.

127.    PHOENIX's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

128.    As a direct and proximate result of PHOENIX's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against PHOENIX for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT IX - VIOLATION OF BUILDING CODE
### (Against PHOENIX)

129.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

130.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

131.    PHOENIX owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

132.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into

29

the operative codes for construction of the Subject Property.

133.    PHOENIX violated the FBC by improper construction and installation of the

building envelope as follows:

a.  Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010,
    2014 FRC R7093.1);
b.  Insufficient length of wire lath staples (2004, 2007, 2010 FRC R703.6.2; 2014
    FRC R703.6; ASTM C1063: 7.10.2.2);
c.  Lath fastener through window fin (2004, 2007, 2010, 2014 FRC R703.1);
d.  Paper-backed lath not lapped paper-to-paper/lath-to-lath (2004, 2007, 2010
    FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3);
e.  Poor embedment of lath into plaster (2004, 2007, 2010 FRC R703.6.1; 2014
    FRC R703.6; ASTM C926 7.2.1);
f.  Lack of isolation and improper application of sealant around window perimeter
    (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
g.  Stucco not applied in 3-step process (2004, 2007, 2010 FRC R703.6.1; 2014
    FRC R703.6; ASTM C926 7.1.6);
h.  Inadequate installation of flashing around window perimeter (2004, 2007, 2010,
    2014 FRC R101.2.1, R703.1; 2010 FBC 104.9);
i.  Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC
    R703.6; ASTM C1063 7.8.3.1);
j.  Weather barrier not integrated with metal diverter/roof flashing (2004, 2007,
    2010, 2014 FRC R703.1);
k.  Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1,
    R703.1; 2010 FBC 104.9);
l.  Lack of isolation/improper application of primary sealant around window
    perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1);
m.  Stucco not bonded to cement masonry substrate (2004, 2007, 2010 FRC
    R703.6.1; 2014 FRC R703.6; ASTM C926 5.2);
n.  Improper application of secondary sealant around penetration (2004, 2007,
    2010 FRC; 2014 FRC R703.1);
o.  Debonding of stucco layers (2004, 2007, 2010 FRC R703.6.1; 2014 FRC
    R703.6; ASTM C926 7.3.3.2);
p.  Improper stucco application (2004, 2007, 2010 FRC R703.6.1; 2014 FRC
    R703.6; ASTM C926 7.3.3.2);
q.  Defects in the material and workmanship incident to the installation of the
    above.

134.    The aggregate effect of the defects set forth above has caused, and will continue to

cause, community-wide water-intrusion damage to components of the building including, but not

limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint,

interior and exterior finishes, and other components of the Townhomes, and undue risk of future

30

damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

135.    PHOENIX knew or should have known that the violations alleged and described above existed.

136.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00

137.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

138.    As a result of the conduct of PHOENIX, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against PHOENIX for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT X - NEGLIGENCE
### (Against MILLARD)

139.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

140.    Upon information and belief, MILLARD served as a subcontractor for the construction of the Project.

141.    MILLARD had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

142.    MILLARD breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

143.    MILLARD further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

144.    Specifically, MILLARD breached its duties as follows:

   a. Lack of 4-inch roof cement over drip edge flange (2014 FRC R905.2.8.5);
   b. Shingle trim line not offset 2" from valley line (2004, 2007, 2010, 2014 FRC R903.1);
   c. Improper installation of roof shingle nails, including improper spacing and improper number of nails, not per manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);

    d.   Starter strip fasteners installed less than 3 inches from edge of roof, not per manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);

    e.   Improperly sealed roof vents (2007, 2010, 2014 FRC R903.1).

145.    MILLARD's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

146.    As a direct and proximate result of MILLARD's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against MILLARD for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## <u>COUNT XI - VIOLATION OF BUILDING CODE</u>
## <u>(Against MILLARD)</u>

147.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

148.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

149.    MILLARD owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

150.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida

Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

151.   Specifically, MILLARD violated the Florida Building Code as follows:

   a.   Lack of 4-inch roof cement over drip edge flange (2014 FRC R905.2.8.5);
   b.   Shingle trim line not offset 2" from valley line (2004, 2007, 2010, 2014 FRC R903.1);
   c.   Improper installation of roof shingle nails, including improper spacing and improper number of nails, not per manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);
   d.   Starter strip fasteners installed less than 3 inches from edge of roof, not per manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);
   e.   Improperly sealed roof vents (2007, 2010, 2014 FRC R903.1).

152.   The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

153.   MILLARD knew or should have known that the violations alleged and described above existed.

154.   As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00

155.   The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

156.   As a result of the conduct of MILLARD, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these

proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against MILLARD for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XII - NEGLIGENCE
### (Against BRAD MCDONALD)

157.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

158.    Upon information and belief, BRAD MCDONALD served as a subcontractor for the construction of the Project.

159.    BRAD MCDONALD had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

160.    BRAD MCDONALD breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

161.   BRAD MCDONALD further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

162.   Specifically, BRAD MCDONALD breached its duties as follows:

   a.  Lack of 4-inch roof cement over drip edge flange (2014 FRC R905.2.8.5);
   b.  Shingle trim line not offset 2" from valley line (2004, 2007, 2010, 2014 FRC R903.1);
   c.  Improper installation of roof shingle nails, including improper spacing and improper number of nails, not per manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);
   d.  Starter strip fasteners installed less than 3 inches from edge of roof, not per manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);
   e.  Improperly sealed roof vents (2007, 2010, 2014 FRC R903.1).

163.   BRAD MCDONALD's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

164.   As a direct and proximate result of BRAD MCDONALD's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

   **WHEREFORE** the ASSOCIATION demands judgment against BRAD MCDONALD for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and

proper.

## COUNT XIII - VIOLATION OF BUILDING CODE
### (Against BRAD MCDONALD)

165.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the

allegations in paragraphs 1 through 62 above.

166.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION

has a private right of action for any damages resulting from a building code violation.

167.    BRAD MCDONALD owed a statutory duty to the ASSOCIATION and the

individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to

construct all the common elements and units of the Townhomes in compliance with the Florida

Building Code.

168.    The operative construction set of approved plans for the Subject Property were

stamped and permitted by the building department as approved under the applicable Florida

Building Code ("FBC"), and these approved plans were therefore incorporated by reference into

the operative codes for construction of the Subject Property.

169.    Specifically, BRAD MCDONALD violated the Florida Building Code as follows:

   a. Lack of 4-inch roof cement over drip edge flange (2014 FRC R905.2.8.5);
   b. Shingle trim line not offset 2" from valley line (2004, 2007, 2010, 2014 FRC
      R903.1);
   c. Improper installation of roof shingle nails, including improper spacing and
      improper number of nails, not per manufacturer's instructions (2004, 2007,
      2010, 2014 FRC R903.1);
   d. Starter strip fasteners installed less than 3 inches from edge of roof, not per
      manufacturer's instructions (2004, 2007, 2010, 2014 FRC R903.1);
   e. Improperly sealed roof vents (2007, 2010, 2014 FRC R903.1).

170.    The aggregate effect of the defects set forth above has caused, and will continue to

cause, community-wide water-intrusion damage to components of the building including, but not

limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint,

interior and exterior finishes, and other components of the Townhomes, and undue risk of future

damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

171.    BRAD MCDONALD knew or should have known that the violations alleged and described above existed.

172.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00

173.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

174.    As a result of the conduct of BRAD MCDONALD, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against BRAD MCDONALD for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XIV – NEGLIGENCE
### (Against 84 LUMBER)

175.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

176.    Upon information and belief, 84 LUMBER served as a subcontractor for the construction of the Project.

177.    84 LUMBER had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

178.    84 LUMBER breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

179.    84 LUMBER further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

180.    Specifically, 84 LUMBER breached its duties as follows:

    a.  Window failed spray test (2004, 2007, 2010, 2014 FRC R703.1);
    b.  Window failed dam test (2004, 2007, 2010, 2014 FRC R703.1);
    c.  Window fin gap under mullion (2004, 2007, 2010, 2014 FRC R101.2, R703.1; 2004, 2007, 2010 FBC 104.9);
    d.  Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1).

181.    84 LUMBER's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

182.    As a direct and proximate result of 84 LUMBER's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against 84 LUMBER for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT XV - VIOLATION OF BUILDING CODE
### (Against 84 LUMBER)

183.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

184.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

185.    84 LUMBER owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

186.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into

the operative codes for construction of the Subject Property.

187.    84 LUMBER violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the following defects:

    a.    Window failed spray test (2004, 2007, 2010, 2014 FRC R703.1);
    b.    Window failed dam test (2004, 2007, 2010, 2014 FRC R703.1);
    c.    Window fin gap under mullion (2004, 2007, 2010, 2014 FRC R101.2, R703.1; 2004, 2007, 2010 FBC 104.9);
    d.    Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1).

188.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

189.    84 LUMBER knew or should have known that the violations alleged and described above existed.

190.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00

191.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

192.    As a result of the conduct of 84 LUMBER, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its

case.

**WHEREFORE** the ASSOCIATION demands judgment against 84 LUMBER for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XVI - NEGLIGENCE
### (Against LITTLE M & M)

193.     The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

194.     Upon information and belief, LITTLE M & M served as a subcontractor for the construction of the Project.

195.   LITTLE M & M had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

196.     LITTLE M & M breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

197.     LITTLE M & M further breached its duties by failing to comply with at least the

minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

198.    Specifically, LITTLE M & M breached its duties as follows:

    a.    improper application of sealant around window perimeter in frame (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
    b.    improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1).

199.    LITTLE M & M's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

200.    As a direct and proximate result of LITTLE M & M's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against LITTLE M & M for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## <u>COUNT XVII - VIOLATION OF BUILDING CODE</u><br><u>(Against LITTLE M & M)</u>

201.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

202.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

203.    LITTLE M & M owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

204.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

205.    LITTLE M & M violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the following defects:

  a.    improper application of sealant around window perimeter in frame (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
  b.    improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1).

206.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

207.    LITTLE M & M knew or should have known that the violations alleged and described above existed.

208.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be

determined at trial, are in excess of $30,000.00.

209. The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

210. As a result of the conduct of LITTLE M & M, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

WHEREFORE the ASSOCIATION demands judgment against LITTLE M & M for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XVIII - NEGLIGENCE
### (Against METRO)

211. The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

212. Upon information and belief, METRO served as a subcontractor for the construction of the Project.

213. METRO had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in

the industry.

214.    METRO breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

215.    METRO further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

216.    Specifically, METRO breached its duties as follows:

    a.  improper application of sealant around window perimeter in frame (2004, 2007, 2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
    b.  improper application of primary sealant around window perimeter in concrete block (2004, 2007, 2010, 2014 FRC R703.1).

217.    METRO's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

218.    As a direct and proximate result of METRO's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against METRO for the resulting damages from the construction deficiencies, the incidental and consequential damages, including

but not limited to loss of use and temporary replacement housing during repairs, temporary repair

costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment

interest, trial by jury, and any other relief the Court deems just and proper.

<u>**COUNT XIX - VIOLATION OF BUILDING CODE**</u>
<u>**(Against METRO)**</u>

219.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the

allegations in paragraphs 1 through 62 above.

220.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION

has a private right of action for any damages resulting from a building code violation.

221.    METRO owed a statutory duty to the ASSOCIATION and the individual Unit

Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the

common elements and units of the Townhomes in compliance with the Florida Building Code.

222.    The operative construction set of approved plans for the Subject Property were

stamped and permitted by the building department as approved under the applicable Florida

Building Code ("FBC"), and these approved plans were therefore incorporated by reference into

the operative codes for construction of the Subject Property.

223.    METRO violated the FBC by improper construction and installation of the building

envelope, including but not limited to by performing construction which resulted in the following

defects:

    a.  improper application of sealant around window perimeter in frame (2004, 2007,
        2010 FRC R703.6.1; 2014 FRC R703.6; ASTM C926 7.1.4);
    b.  improper application of primary sealant around window perimeter in concrete
        block (2004, 2007, 2010, 2014 FRC R703.1).

224.    The aggregate effect of the defects set forth above has caused, and will continue to

cause, community-wide water-intrusion damage to components of the building including, but not

limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint,

interior and exterior finishes, and other components of the Townhomes, and undue risk of future

damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will

continue to cause, loss of use to the Association and its members.

225.    METRO knew or should have known that the violations alleged and described

above existed.

226.    As a result of the foregoing FBC violations, the ASSOCIATION and its members

have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be

determined at trial, are in excess of $30,000.00

227.    The foregoing FBC violation was both the legal and factual cause of the

aforementioned damages.

228.    As a result of the conduct of METRO, in violation of applicable building and

construction codes and ordinances, the ASSOCIATION has been compelled to retain the services

of legal counsel to comply with statutory requirements and to institute and prosecute these

proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its

case.

**WHEREFORE** the ASSOCIATION demands judgment against METRO for damages

including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building

code violations, the resulting damages from the building code violations, incidental and

consequential damages caused thereby, including but not limited to loss of use and temporary

replacement housing during repairs, temporary repair costs, diminution in value damages, costs

incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief

the court deems just and proper.

## COUNT XX - NEGLIGENCE
### (Against DANIEL)

229.     The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

230.     Upon information and belief, DANIEL served as a subcontractor for the construction of the Project.

231.   DANIEL had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

232.     DANIEL breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

233.     DANIEL further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

234.     Specifically, DANIEL breached its duties as follows:

   a.   Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);
   b.   Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);
   c.   Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9).

49

235.    DANIEL's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

236.    As a direct and proximate result of DANIEL's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against DANIEL for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT XXI - VIOLATION OF BUILDING CODE
### (Against DANIEL)

237.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

238.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

239.    DANIEL owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

240.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

241.    DANIEL violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the following defects:

    a.   Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);

    b.   Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);

    c.   Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9).

242.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

243.    DANIEL knew or should have known that the violations alleged and described above existed.

244.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00

245.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

246.    As a result of the conduct of DANIEL, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against DANIEL for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

<u>**COUNT XXII - NEGLIGENCE**</u>
<u>**(Against SUTTON)**</u>

247.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

248.    Upon information and belief, SUTTON served as a subcontractor for the construction of the Project.

249.   SUTTON had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

250.    SUTTON breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

251.    SUTTON further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in

accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

252.    Specifically, SUTTON breached its duties as follows:

    a.    Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);

    b.    Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);

    c.    Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9).

253.    SUTTON's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

254.    As a direct and proximate result of SUTTON's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against SUTTON for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## <u>COUNT XXIII - VIOLATION OF BUILDING CODE</u><br><u>(Against SUTTON)</u>

255.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

256.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

257.    SUTTON owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

258.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

259.    SUTTON violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the following defects:

    a.    Insufficient lap of weather barrier (2004, 2007, 2010 FRC R703.6.2; 2014 FRC R703.6; ASTM C1063 7.8.3.1);
    b.    Weather barrier not integrated with metal diverter/roof flashing (2004, 2007, 2010, 2014 FRC R703.1);
    c.    Improper installation of building wrap (2004, 2007, 2010, 2014 FRC R101.2.1, R703.1; 2010 FBC 104.9).

260.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

261.    SUTTON knew or should have known that the violations alleged and described above existed.

262.    As a result of the foregoing FBC violations, the ASSOCIATION and its members

54

have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00

263.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

264.    As a result of the conduct of SUTTON, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against SUTTON for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XXIV - NEGLIGENCE
### (Against GALLO)

265.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

266.    Upon information and belief, GALLO served as a subcontractor for the construction of the Project.

267.    GALLO had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards,

plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

268.    GALLO breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

269.    GALLO further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

270.    Specifically, GALLO breached its duties as follows:

    a.   Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
    b.   Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
    c.   Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
    d.   Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
    e.   Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
    f.   Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
    g.   Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);
    h.   Defects in the material and workmanship incident to the installation of the above.

271.    GALLO's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

272.    As a direct and proximate result of GALLO's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

WHEREFORE the ASSOCIATION demands judgment against GALLO for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT XXV - VIOLATION OF BUILDING CODE
### (Against GALLO)

273.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

274.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

275.    GALLO owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

276.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

277.   GALLO violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the following defects:

a.  Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
b.  Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
c.  Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
d.  Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
e.  Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
f.  Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
g.  Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);
h.  Defects in the material and workmanship incident to the installation of the above.

278.   The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

279.   GALLO knew or should have known that the violations alleged and described above existed.

280.   As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00.

281.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

282.    As a result of the conduct of GALLO, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against GALLO for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XXVI - NEGLIGENCE
### (Against ROCKWELL)

283.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

284.    Upon information and belief, ROCKWELL served as a subcontractor for the construction of the Project.

285.    ROCKWELL had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

286.    ROCKWELL breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

287.    ROCKWELL further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

288.    Specifically, ROCKWELL breached its duties as follows:

   a. Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   b. Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   c. Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   d. Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   e. Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   f. Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   g. Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);
   h. Defects in the material and workmanship incident to the installation of the above.

289.    ROCKWELL's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

290.    As a direct and proximate result of ROCKWELL's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against ROCKWELL for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## <u>COUNT XXVII - VIOLATION OF BUILDING CODE</u><br><u>(Against ROCKWELL)</u>

291.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

292.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

293.    ROCKWELL owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

294.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

295.    ROCKWELL violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the

following defects:

    a.  Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    b.  Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    c.  Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    d.  Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    e.  Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    f.  Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    g.  Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);

    h.  Defects in the material and workmanship incident to the installation of the above.

296.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

297.    ROCKWELL knew or should have known that the violations alleged and described above existed.

298.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00.

299.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

300.    As a result of the conduct of ROCKWELL, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against ROCKWELL for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XXVIII - NEGLIGENCE
### (Against LEOLA)

301.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

302.    Upon information and belief, LEOLA served as a subcontractor for the construction of the Project.

303.    LEOLA had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

304.    LEOLA breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water

damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

305.    LEOLA further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

306.    Specifically, LEOLA breached its duties as follows:

a.  Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
b.  Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
c.  Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
d.  Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
e.  Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
f.  Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
g.  Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);
h.  Defects in the material and workmanship incident to the installation of the above.

307.    LEOLA's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

308.    As a direct and proximate result of LEOLA's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and

deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

   **WHEREFORE** the ASSOCIATION demands judgment against LEOLA for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT XXIX - VIOLATION OF BUILDING CODE
### (Against LEOLA)

   309.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

   310.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

   311.    LEOLA owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

   312.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

   313.    LEOLA violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the following defects:

a. Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

b. Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

c. Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

d. Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

e. Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

f. Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

g. Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);

h. Defects in the material and workmanship incident to the installation of the above.

314. The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

315. LEOLA knew or should have known that the violations alleged and described above existed.

316. As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00.

317. The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

318. As a result of the conduct of LEOLA, in violation of applicable building and

66

construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against LEOLA for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

## COUNT XXX - NEGLIGENCE
### (Against BADGER)

319.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

320.    Upon information and belief, BADGER served as a subcontractor for the construction of the Project.

321.   BADGER had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

322.    BADGER breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities,

67

necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

323.    BADGER further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

324.    Specifically, BADGER breached its duties as follows:

    a.  Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    b.  Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    c.  Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    d.  Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    e.  Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    f.  Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

    g.  Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);

    h.  Defects in the material and workmanship incident to the installation of the above.

325.    BADGER's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

326.    As a direct and proximate result of BADGER's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and

consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be

proven at trial.

WHEREFORE the ASSOCIATION demands judgment against BADGER for the

resulting damages from the construction deficiencies, the incidental and consequential damages,

including but not limited to loss of use and temporary replacement housing during repairs,

temporary repair costs, diminution in value damages, costs incurred in the prosecution of this

lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

### COUNT XXXI - VIOLATION OF BUILDING CODE
### (Against BADGER)

327.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the

allegations in paragraphs 1 through 62 above.

328.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION

has a private right of action for any damages resulting from a building code violation.

329.    BADGER owed a statutory duty to the ASSOCIATION and the individual Unit

Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the

common elements and units of the Townhomes in compliance with the Florida Building Code.

330.    The operative construction set of approved plans for the Subject Property were

stamped and permitted by the building department as approved under the applicable Florida

Building Code ("FBC"), and these approved plans were therefore incorporated by reference into

the operative codes for construction of the Subject Property.

331.    BADGER violated the FBC by improper construction and installation of the

building envelope, including but not limited to by performing construction which resulted in the

following defects:

   a. Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1;
      2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   b. Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010,

2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

c. Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

d. Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

e. Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

f. Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

g. Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);

h. Defects in the material and workmanship incident to the installation of the above.

332.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

333.    BADGER knew or should have known that the violations alleged and described above existed.

334.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00.

335.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

336.    As a result of the conduct of BADGER, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services

of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against BADGER for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

<u>**COUNT XXXII - NEGLIGENCE**</u>
<u>**(Against GABLE)**</u>

337.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

338.    Upon information and belief, GABLE served as a subcontractor for the construction of the Project.

339.    GABLE had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

340.    GABLE breached its duties by negligently constructing the Townhomes, which has caused, and will continue to cause, damage to the Townhomes, including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs. Moreover, the defects alleged here in have caused, and will

continue to cause, loss of use to the Association and its members.

341.    GABLE further breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

342.    Specifically, GABLE breached its duties as follows:

    a.    Window failed spray test (2004, 2007, 2010, 2014 FRC R703.1);
    b.    Window failed dam test (2004, 2007, 2010, 2014 FRC R703.1);
    c.    Window fin gap under mullion (2004, 2007, 2010, 2014 FRC R101.2, R703.1; 2004, 2007, 2010 FBC 104.9);
    d.    Stucco weather barrier reverse lapped under window sill (2004, 2007, 2010, 2014 FRC R7093.1).

343.    GABLE's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

344.    As a direct and proximate result of GABLE's negligence, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against GABLE for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

## COUNT XXXIII - VIOLATION OF BUILDING CODE

**(Against GABLE)**

345.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

346.    Pursuant to Florida Statutes §553.84, on behalf of its members, the ASSOCIATION has a private right of action for any damages resulting from a building code violation.

347.    GABLE owed a statutory duty to the ASSOCIATION and the individual Unit Owners pursuant to the Florida Building Code and §553.84, Florida Statutes, to construct all the common elements and units of the Townhomes in compliance with the Florida Building Code.

348.    The operative construction set of approved plans for the Subject Property were stamped and permitted by the building department as approved under the applicable Florida Building Code ("FBC"), and these approved plans were therefore incorporated by reference into the operative codes for construction of the Subject Property.

349.    GABLE violated the FBC by improper construction and installation of the building envelope, including but not limited to by performing construction which resulted in the following defects:

   a.  Improperly installed hurricane straps (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   b.  Edge nailing missing or improperly installed at shear walls (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   c.  Sill nailing was missing or improperly installed at edge blocking (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   d.  Roof sheathing edge nailing is missing (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   e.  Roof sheathing was too thing, not incompliance with building plans (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);
   f.  Floor trusses were installed in direct contact with masonry (2004, 2007, 2010, 2014 FRC R101.2.1; 2004, 2007 FBC 104.9, 106.4; 2010, 2014 FBC 104.9, 107.4);

73

    g. Improper nails used at fire-treated roof sheathing (2004, 2007, 2010, 2014 FRC R317.3.3);

    h. Defects in the material and workmanship incident to the installation of the above.

350.    The aggregate effect of the defects set forth above has caused, and will continue to cause, community-wide water-intrusion damage to components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the Townhomes, and undue risk of future damages throughout the Townhomes. Moreover, the defects alleged here in have caused, and will continue to cause, loss of use to the Association and its members.

351.    GABLE knew or should have known that the violations alleged and described above existed.

352.    As a result of the foregoing FBC violations, the ASSOCIATION and its members have been damaged and injured as alleged elsewhere herein. Damages, in an amount to be determined at trial, are in excess of $30,000.00.

353.    The foregoing FBC violation was both the legal and factual cause of the aforementioned damages.

354.    As a result of the conduct of GABLE, in violation of applicable building and construction codes and ordinances, the ASSOCIATION has been compelled to retain the services of legal counsel to comply with statutory requirements and to institute and prosecute these proceedings, and to retain expert consultants and witnesses as reasonably necessary to prove its case.

**WHEREFORE** the ASSOCIATION demands judgment against GABLE for damages including but not limited to those pursuant to Fla. Stat. §553.84, the cost of repairing the building code violations, the resulting damages from the building code violations, incidental and consequential damages caused thereby, including but not limited to loss of use and temporary

replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the court deems just and proper.

<u>**COUNT XIV – VICARIOUS LIABILITY**</u>
<u>**(Against 84 LUMBER)**</u>

355.    The ASSOCIATION reasserts, re-alleges, and incorporates by reference all the allegations in paragraphs 1 through 62 above.

356.    Upon information and belief, 84 LUMBER served as a subcontractor for the construction of the Project.

357.    84 LUMBER had a duty to the ASSOCIATION and its members to use reasonable care when constructing the Townhomes, including, but not limited to, designing and constructing the Townhomes to at least the minimum requirements of the applicable building codes, standards, plans and specifications, contract documents, manufacturers' recommendations, and standards in the industry.

358.    84 LUMBER breached its duties by failing to comply with at least the minimum requirements of the applicable codes and standards, and by failing to construct the Townhomes in accordance with the approved plans and specifications, contract documents, and manufacturers' recommendations for the Townhomes, thereby resulting in damages including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs.

359.    Further, as a subcontractor for the original construction, 84 LUMBER is vicariously responsible for the negligent construction performed by any subcontractors utilized in the construction of the Community, including but not limited to, GABLE.

360.    Specifically, 84 LUMBER is variously liable for its subcontractors' breaches, including but not limited to, GABLE, as follows:

    a.  Window failed spray test (2004, 2007, 2010, 2014 FRC R703.1);

    b.  Window failed dam test (2004, 2007, 2010, 2014 FRC R703.1);

    c.  Window fin gap under mullion (2004, 2007, 2010, 2014 FRC R101.2, R703.1; 2004, 2007, 2010 FBC 104.9);

    d.  Stucco weather barrier reverse lapped under windowsill (2004, 2007, 2010, 2014 FRC R7093.1).

361.    84 LUMBER and its subcontractor's, including but not limited to, GABLE's acts and omissions were a direct, proximate, and legal cause of the damages suffered by the ASSOCIATION.

362.    As a direct and proximate result of 84 LUMBER's negligence, and the negligence of its subcontractors, including but not limited to, GABLE, the ASSOCIATION has been and will be required to expend significant sums of money to remedy the defects and deficiencies, the resulting damages from the construction deficiencies, and the incidental and consequential damages as alleged elsewhere herein, in an amount in excess of $30,000.00 to be proven at trial.

**WHEREFORE** the ASSOCIATION demands judgment against 84 LUMBER for the resulting damages from the construction deficiencies, the incidental and consequential damages, including but not limited to loss of use and temporary replacement housing during repairs, temporary repair costs, diminution in value damages, costs incurred in the prosecution of this lawsuit, pre-judgment interest, trial by jury, and any other relief the Court deems just and proper.

DATED: July 29, 2022.

**BALL JANIK LLP**

By:    _/s/  Greg K. Demers_
       **James C. Prichard,** Esq. **(**FBN 1000397)
       **Evan J. Small**, Esq. (FBN 57306)
       **Greg K. Demers**, Esq. (FBN 124665)
       **Brian T. Crevasse,** Esq. **(**FBN 10343)
       201 E Pine Street, Suite 600
       Orlando, FL 32801
       Telephone: (407) 455-5664
       Facsimile: (407) 902-2105
       jprichard@balljanik.com
       esmall@balljanik.com
       bcrevasse@balljanik.com
       gdemers@balljanik.com
       spoitras@balljanik.com

cbetancourt@balljanik.com
mwise@balljanik.com
orlandodocket@balljanik.com

*Counsel for Pine Ridge at Oak Creek Townhomes Association, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been filed and served via the Florida Courts E-Filing Portal on this 29th day of July, 2022.

/s/ Greg K. Demers
**Greg K. Demers, Esq.**

## SERVICE LIST

| | |
|---|---|
| JEFFREY M. KATZ<br>Katz, Siegel & Maple, P.L.<br>2633 McCormick Drive, Suite 101<br>Clearwater, FL 33759<br>(727) 796-1000<br>jkatz@ksmlawyers.com<br>mmahoney@ksmlawyers.com<br>sdavis@ksmlawyers.com<br><br>*Counsel for Defendant, Ken Creel Stucco & Stone, Inc.*<br><br>DENISE M. ANDERSON<br>DAVID A. MERCER<br>Butler Weihmuller Katz Craig LLP<br>400 N. Ashley Drive, Suite 2300<br>Tampa, FL 33602<br>(813) 281-1900<br>danderson@butler.legal<br>dmercer@butler.legal<br>tbarry@butler.legal<br>jjohnson@butler.legal<br><br>*Counsel for Defendant/Crossclaim Defendant, Ken Creel Stucco & Stone, Inc.* | JAMES MICHAEL WALLS<br>LANNIE D. HOUGH, JR.<br>ROBIN H. LEAVENGOOD<br>BRIAN C. PORTER<br>Carlton Fields P.A.<br>4221 W. Boy Scout Boulevard<br>Tampa, FL 33607<br>(813) 223-7000<br>mwalls@carltonfields.com<br>lhough@carltonfields.com<br>bporter@carltonfields.com<br>nbonilla@carltonfields.com<br>rleavengood@carltonfields.com<br>brosa@carltonfields.com<br>vwilliams@carltonfields.com<br>jcostello@carltonfields.com<br><br>*Counsel for Defendants Taylor Morrison, Inc., Taylor Morrison of Florida, Inc. and Taylor Morrison Services, Inc f/k/a Morrison Homes, Inc.* |
| ~~MICHAEL SWITZER~~ | MATTHEW OLMSTED |

| | |
|---|---|
| ~~Goldberg Segalla LLP~~<br>~~800 North Magnolia Avenue, Suite 1201~~<br>~~Orlando, FL 32803~~<br>~~(407) 458-5600~~<br>~~mswitzer@goldbergsegalla.com~~<br>~~pborges@goldbergsegalla.com~~<br><br>*~~Counsel for Defendant, ProBuild Company,~~*<br>*~~LLC~~*— *Dismissed w/o Prejudice 1/28/2021* | DORIE ORTIZ<br>Chartwell Law<br>1191 East Newport Center Drive<br>Penthouse Suite H<br>Deerfield Beach, FL 33442<br>(754) 227-7995<br>molmsted@chartwelllaw.com<br>dortiz@chartwelllaw.com<br>ksantana@chartwelllaw.com<br><br>*Counsel for Defendant, Phoenix Construction Group LLC* |
| HARDY L. ROBERTS, III<br>MARK A. SMITH<br>KELLY CAREY BAGGE<br>Carey, O'Malley, Whitaker, Mueller, Roberts & Smith, P.A.<br>712 South Oregon Avenue<br>Tampa, FL 33606<br>(813) 250-0577<br>hroberts@careyomalley.com<br>msmith@careyomalley.com<br>kbagge@careyomalley.com<br>bsickimich@careyomalley.com<br>sschrand@careyomalley.com<br>aguy@careyomalley.com<br><br>*Counsel for Defendant/Third-Party Defendant, 84 Lumber Company* | ~~BRYAN M. KRASINSKI~~ *(Dismissed)*<br>~~STEFFEN LOCASCIO~~<br>~~Kubicki Draper~~<br>~~400 North Ashley Drive, Suite 1200~~<br>~~Tampa, FL 33602~~<br>~~(813) 314-1136~~<br>~~bmk-kd@kubickidraper.com~~<br>~~bmk@kubickidraper.com~~<br><br>*~~Counsel for Defendant, Coogan Window & Door, Inc.~~*<br><br>~~GEORGE R. TRUITT, JR.~~ *(Dismissed)*<br>~~STEPHEN W. STUKEY~~<br>~~NATHAN F. DIEHL~~<br>~~Cole, Scott & Kissane, P.A.~~<br>~~9150 South Dadeland Boulevard~~<br>~~Suite 1400~~<br>~~Miami, FL 33156~~<br>~~(305) 350-5300~~<br>~~george.truitt@csklegal.com~~<br>~~stephen.stukey@csklegal.com~~<br>~~nathan.diehl@csklegal.com~~<br>~~jessica.begona@csklegal.com~~<br>~~maribel.ortiz@csklegal.com~~<br>~~keila.cruzcorrea@csklegal.com~~<br>~~construction.miami@csklegal.com~~<br><br>*~~Counsel for Defendant, Coogan Window & Door, Inc.~~* |
| KIERAN F. O'CONNOR<br>ELIZABETH DROZ-STOLINAS<br>O'CONNOR & O'CONNOR, LLC<br>800 North Magnolia Avenue, Ste 1350<br>Orlando, FL 32803 | JAMES L. PRICE<br>Hamilton, Price & Marshall, P.A.<br>2400 Manatee Avenue West<br>Bradenton, FL 34205<br>(941) 748-0550 |

| | |
|---|---|
| (407) 843-2100<br>koconnor@oconlaw.com<br>edroz-stolinas@oconlaw.com<br>rps@oconlaw.com<br>mgibilisco@oconlaw.com<br>eservice@oconlaw.com<br><br><br>*Counsel for Defendant Jeffco Construction, Inc.*<br><br>~~ALEX M. SARSFIELD~~<br>~~Mills Paskert Divers~~<br>~~100 North Tampa Street, Suite 3700~~<br>~~Tampa, FL 33602~~<br>~~(813) 229-3500~~<br>~~asarsfield@mpdlegal.com~~<br>~~kygnelzi@mpdlegal.com~~<br><br>~~*Counsel for Defendant, Jeffco Construction, Inc. Withdrew 7.17.20*~~ | jim@hamiltonpricelaw.com<br>holly@hamiltonpricelaw.com<br><br>*Counsel for Third-Party Defendant, Nu School* |
| BETH-ANN SCHULMAN<br>RYAN G. KNIGHT<br>CARLA M. HOWARD<br>Boyd & Jenerette, P.A.<br>800 N. Magnolia Ave, Suite 430<br>Orlando, FL 32803<br>(407) 309-4760<br>bschulman@boydjen.com<br>rknight@boydjen.com<br>estull@boydjen.com<br>choward@boydjen.com<br><br>*Counsel for Defendant/Crossclaim Defendant, Metro Painting Tampa, Inc.*<br><br>JOSEPH L. ZOLLNER<br>Law Office of Amy L. Warpinski<br>1301 Riverplace Boulevard, Suite 1640<br>Jacksonville, FL 32207<br>(904) 346-5422<br>floridacdlegalmail@libertymutual.com<br>joseph.zollner@libertymutual.com<br><br>*Co-Counsel for Defendant/Crossclaim Defendant, Metro Painting Tampa, Inc.* | DORYK "RUSTY" B. GRAF, JR.<br>MAI M. LE<br>Moody & Graf, P.A.<br>1101 N. Lake Destiny Road, Suite 200<br>Maitland, FL 32751<br>(407) 755-6900<br>rgraf@moodygraf.com<br>pmallion@moodygraf.com<br>mle@moodygraf.com<br>iperera@moodygraf.com<br><br>*Counsel for Defendant, Little M&M' s Painting, Inc.* |
| RINALDO J. CARTAYA III | LISA A. OONK |

| | |
|---|---|
| ROBERT N. JOHNSON<br>ERIK A.L. SCHIFF<br>ROBERT J. RUIZ<br>ANDREW S. YATKMAN<br>Quintairos, Prieto, Wood & Boyer, P.A.<br>255 South Orange Avenue, Suite 900<br>Orlando, FL 32801<br>(407) 872-6011<br>rinaldo.cartaya@qpwblaw.com<br>rjohnson@qpwblaw.com<br>erik.schiff@qpwblaw.com<br>robert.ruiz@qpwblaw.com<br>cdorlandofiling@qpwblaw.com<br>andrew.yatkman@qpwblaw.com<br><br>*Counsel for Defendant, Millard Roofing, Inc.<br>And Southern Floor Systems* | VERA TSAI<br>Gartner +Bloom P.C.<br>1101 E. Cumberland Ave.<br>Suite 201H-153<br>Tampa, FL 33602<br>gbfl@gartnerbloom.com<br>loonk@gartnerbloom.com<br>vtsai@gartnerbloom.com<br><br>*Co-Counsel for Defendant/Cross-Defendant, Millard Roofing, Inc.* |
| DAVID E. WEBER<br>VICTORIA J. CRIBB<br>Bolin Law Group<br>1905 east 7th Avenue<br>Tampa, FL 33605<br>(813) 848-0600<br>dew@bolin-law.com<br>abh@bolin-law.com<br>vjc@bolin-law.com<br><br>*Counsel for Juanma Lath Stucco, Inc.* | JAMES R. BROWN<br>ANDREW WILLERS<br>Wicker Smith O'hara Mccoy & Ford, P.A.<br>100 N. Tampa St., Suite 1800<br>Tampa, FL 33602<br>(813) 222-3939<br>tpacrtpleadings@wickersmith.com<br><br>*Attorneys for Gable Window Replacement, Inc.* |
| JAYNE ANN PITTMAN<br>AIMEE K. TOBIN<br>NATALIE C. FISCHER<br>Conroy Simberg<br>Two South Orange Avenue, Suite 300<br>Orlando, FL 32801<br>(407) 649-9797<br>eserviceorl@conroysimberg.com<br>jpittman@conroysimberg.com<br>mmaitland@conroysimberg.com<br>nfischer@conroysimberg.com<br><br>*Counsel for Sutton Contracting Solutions, Inc.* | ANDREW J. MCBRIDE<br>Adams and Reese LLP<br>150 Second Avenue North, 17th Floor<br>St. Petersburg, FL 33701<br>(727) 502-8200<br>andrew.mcbride@arlaw.com<br>sharon.stevens@arlaw.com<br>beverly.snider@arlaw.com<br><br>*Counsel for Defendant Third-Party Defendant, New Alenco Windows, Ltd.* |
| AMANDA L. INGERSOLL<br>Law Office of Rebecca Woltjer | ELIAS LEONARD DSOUZA<br>D & S Law Group |

| | |
|---|---|
| P.O. Box 7055<br>Madison, WI 53707<br>Main Line (800) 692-6326<br>Direct: (800) 692-6326 ext. 44664<br>aingerso@amfam.com<br>janell.tucker@amfam.com<br><br>*Counsel for Third-Party Defendant, M.A.*<br>*Stucco, Inc.* | 8751 W. Broward Blvd<br>Suite 301<br>Plantation, FL 33324<br>(954) 358-5911<br>service@dsouzalegal.com<br>elias@dsouzalegal.com<br><br>*Counsel for Defendant, A & Z Stucco, LLC*<br><br><br>MICHAEL A. MASSARI<br>FRANCIS A. MORA<br>Banker Lopez Gassler P.A.<br>501 East Kennedy Boulevard, Suite 1700<br>Tampa, FL 33602<br>(813) 347-4003<br>service-mmassari@bankerlopez.com<br>service-fmora@bankerlopez.com<br><br>*Co-Counsel for A & Z Stucco, LLC* |
| ANDREW T. MARSHALL<br>SARA W. MAPES<br>Hamilton, Price & Marshall, P.A.<br>2400 Manatee Avenue West<br>Bradenton, FL 34205<br>(941) 748-0550<br>andrew@hamiltonpricelaw.com<br>sara@hamiltonpricelaw.com<br>atmservice@hamiltonpricelaw.com<br>nancy@hamiltonpricelaw.com<br>kelsey@hamiltonpricelaw.com<br><br>*Counsel for Defendant/Crossclaim Defendant,*<br>*Badger Construction & Associates, Inc.* | DUSTAN M. LORIMER<br>ASHLEY A. GRAHAM<br>PATRICK D. HINCHEY<br>Luks, Santaniello, Petrillo, Cohen &<br>Peterfriend<br>100 N Tampa Street, Suite 2120<br>Tampa, FL 33602<br>(813) 226-0081<br>lukstpa-pleadings@ls-law.com<br>dlorimer@insurancedefense.net<br>eposey@insurancedefense.net<br>agraham@insurancedefense.net<br>lcarlston@insurancedefense.net<br>phinchey@insurancedefense.net<br><br>*Counsel For Brad McDonald Roofing &*<br>*Construction, Inc.* |
| JENNIFER L. MARINO<br>CHRISTOPHER L. WELTER<br>Litchfield Cavo, LLP<br>5201 W. Kennedy Boulevard, Suite 450<br>Tampa, FL 33609<br>(813) 289-0690<br>marino@litchfieldcavo.com<br>welter@litchfieldcavo.com<br>laliberte@litchfieldcavo.com<br>laukat@litchfieldcavo.com | JOHN D. CAMPO<br>RYAN P. SULLIVAN<br>ASHLEIGH BEATTY<br>Niesen, Price, Worthy, Campo, P.A.<br>5216 S.W. 91 Drive<br>Gainesville, FL 32608<br>(352) 373-9031<br>john@npw-law.com<br>ryan@npw-law.com<br>ashleigh@npw-law.com |

| tampaeservice@litchfieldcavo.com | mellina@npw-law.com |
|---|---|
| *Counsel for Defendant/Crossclaim Defendant, Rockwell Building Systems, LLC* | *Counsel for Defendant Leola Construction, LLC* |
| | ANDREW T. MARSHALL |
| | SARA W. MAPES |
| | Hamilton, Price & Marshall, P.A. |
| | 2400 Manatee Avenue West |
| | Bradenton, FL 34205 |
| | (941) 748-0550 |
| | andrew@hamiltonpricelaw.com |
| | sara@hamiltonpricelaw.com |
| | atmservice@hamiltonpricelaw.com |
| | nancy@hamiltonpricelaw.com |
| | kelsey@hamiltonpricelaw.com |
| | kim@hamiltonpricelaw.com |
| | *Co-Counsel Defendant/Cross-Claim Defendant, Leola Construction, LLC* |